## STATE OF CONNECTICUT *v.* ROBERT KALMAN
## (AC 24788)

Lavery, C. J., and McLachlan and Cretella, Js.

Argued October 12, 2005—officially released January 10, 2006

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Susan F. Filan*, former assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Robert Kalman, appeals from the judgment of the trial court, rendered after a trial to the court, convicting him of the crime of possession of an assault weapon in violation of General Statutes § 53-202c.[1] On appeal, the defendant claims that the court violated his due process rights by (1) concluding that a Maadi MISR firearm is a prohibited assault weapon under General Statutes (Rev. to 1999) § 53-202a[2] and (2) failing to conclude that § 53-202a is

[1] The court additionally found the defendant guilty of threatening in violation of General Statutes § 53a-62 and breach of the peace in violation of General Statutes § 53a-181. The court found the defendant not guilty of the charge of reckless endangerment in the first degree in violation of General Statutes § 53a-63. Although the defendant appealed from the judgment of conviction of having violated General Statutes §§ 53-202c and 53a-62, he has briefed only those issues involving his conviction under § 53-202c. Accordingly, the defendant's appeal as to the judgment of conviction under § 53a-62 is dismissed. See *State* v. *Eagles*, 74 Conn. App. 332, 333–34, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003).

[2] On the date of the incident at issue, June 4, 2000, General Statutes (Rev. to 1999) § 53-202a provided: "(a) As used in this section and sections 53-202b to 53-202k, inclusive, and subsection (h) of section 53a-46a, 'assault weapon' means:

"(1) Any selective-fire firearm capable of fully automatic, semiautomatic or burst fire at the option of the user or any of the following specified semiautomatic firearms: Algimec Agmi; Armalite AR-180; Australian Automatic Arms SAP Pistol; Auto-Ordnance Thompson type; Avtomat Kalashni-

vague as applied to him under the circumstances of this case. We disagree and affirm the judgment of the trial court.

The court reasonably could have found the following facts. Sometime between 1 p.m. and 2 p.m. on June 4, 2000, the defendant arrived at the Fireside Restaurant in New Haven with three or four other individuals and proceeded toward an outside deck. The defendant had patronized the restaurant in the past and had a heavy Russian or European accent. He was carrying a guitar case, which he placed on the ground beside him when he sat down at a table to order food and drinks. A waitress, Christine Hurley, saw the defendant open the case. While serving other patrons, she heard a gun being cocked and saw the defendant holding a shotgun or rifle. Joshua Giamette, a patron at the restaurant, saw the defendant struggle with another patron, Tony Speransa. Speransa grabbed the end of the weapon with one hand and hit the defendant with his free hand,

kov AK-47 type; Barrett Light-Fifty model 82A1; Beretta AR-70; Bushmaster Auto Rifle and Auto Pistol; Calico models M-900, M-950 and 100-P; Chartered Industries of Singapore SR-88; Colt AR-15 and Sporter; Daewoo K-1, K-2, Max-1 and Max-2; Encom MK-IV, MP-9 and MP-45; Fabrique Nationale FN/FAL, FN/LAR, or FN/FNC; FAMAS MAS 223; Feather AT-9 and Mini-AT; Federal XC-900 and XC-450; Franchi SPAS-12 and LAW-12; Galil AR and ARM; Goncz High-Tech Carbine and High-Tech Long Pistol; Heckler & Koch HK-91, HK-93, HK-94 and SP-89; Holmes MP-83; MAC-10, MAC-11 and MAC-11 Carbine type; Intratec TEC-9 and Scorpion; Iver Johnson Enforcer model 3000; Ruger Mini-14/5F folding stock model only; Scarab Skorpion; SIG 57 AMT and 500 series; Spectre Auto Carbine and Auto Pistol; Springfield Armory BM59, SAR-48 and G-3; Sterling MK-6 and MK-7; Steyr AUG; Street Sweeper and Striker 12 revolving cylinder shotguns; USAS-12; UZI Carbine, Mini-Carbine and Pistol; Weaver Arms Nighthawk; Wilkinson 'Linda' Pistol;

"(2) A part or combination of parts designed or intended to convert a firearm into an assault weapon, or any combination of parts from which an assault weapon may be rapidly assembled if those parts are in the possession or under the control of the same person.

"(b) As used in this section and sections 53-202b to 53-202k, inclusive, and subsection (h) of section 53a-46a, the term 'assault weapon' does not include any firearm modified to render it permanently inoperable."

causing the weapon to fall to the deck. Giamette ran over, picked up the weapon and ran off into a wooded area to hide the weapon until the police could arrive. The defendant and his companions got into a car and left the premises.

When a police officer arrived, Giamette led him into the wooded area to the place where he had hidden the weapon. The officer waited at the site until another officer arrived to seize and process the weapon. After processing, the weapon was determined to be a 7.62 millimeter Maadi MISR manufactured in Egypt. The weapon was test fired and found to be operable. The defendant was arrested and charged with possession of an assault weapon in violation of § 53-202c.

The defendant's case was tried before the court in December, 2002. One of the state's witnesses was Sergeant Timothy Osika of the state police, who had been assigned to the special licensing and firearms unit for nearly five years. That unit is responsible for the regulation of the sale and transfer of firearms, the regulation of assault weapons and machine guns and the issuance of state pistol carrier permits. Osika was familiar with § 53-202a, the statute defining assault weapons, and compared the Maadi MISR used in the incident with an Avtomat Kalashnikov AK-47. Utilizing a tripartite test employed by the state police to determine whether a weapon is an AK-47 type, he demonstrated how the Maadi MISR looks like, works like and has parts that are interchangeable with an AK-47 weapon.

I

The defendant claims that his conviction of possession of an assault weapon under § 53-202c violates his due process rights because, as a matter of law, the Maadi MISR is not an "assault weapon" as defined by § 53-202a. Specifically, the defendant argues that the Maadi MISR is not an "Avtomat Kalasnikov AK-47

type."[3] "The defendant's claim raises a question of statutory interpretation, over which our review is plenary." *State* v. *Boyd*, 272 Conn. 72, 76, 861 A.2d 1155 (2004).

"Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 272 Conn. 76. "[P]ursuant to § 1-2z, [the court is] to go through the following initial steps: first, consider the language of the statute at issue, including its relationship to other statutes, as applied to the facts of the case; second, if after the completion of step one, [the court] conclude[s] that, as so applied, there is but one likely or plausible meaning of the statutory language, [the court] stop[s] there; but third, if after the completion of step one, [the court] conclude[s] that, as applied to the facts of the case, there is more than one likely or plausible meaning of the statute, [the court] may consult other sources, beyond the statutory language, to ascertain the meaning of the statute.

"It is useful to remind ourselves of what, in this context, we mean when we say that a statutory text has a

[3] The state argues that the defendant's claim was not raised at trial and, therefore, cannot be considered by this court. Although the issue was not phrased in the precise language now presented by the defendant, it was, at the very least, raised by implication. Certainly, the court recognized that it was to determine whether the Maadi MISR was an assault weapon. At trial, the court stated: "My function is going to be to determine whether the Maadi, the Maadi in this case, is an AK-47 type and, specifically, whether or not [the applicable] statute includes an AK-47 type beyond an actual AK-47." We treat the issue as having been preserved at trial. Accordingly, review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), is not necessary.

plain meaning, or, what is the same, a plain and unambiguous meaning. [Our Supreme Court] has already defined that phrase. By that phrase we mean the meaning that is so strongly indicated or suggested by the language as applied to the facts of the case, without consideration, however, of its purpose or the other, extratextual sources of meaning . . . that, when the language is read as so applied, it appears to be *the* meaning and appears to preclude any other likely meaning. . . . Put another way, if the text of the statute at issue, considering its relationship to other statutes, would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Miranda*, 274 Conn. 727, 738–39, 878 A.2d 1118 (2005) (*Borden, J.,* concurring).

The relevant text of § 53-202a indicates that all selective fire firearms and certain specified semiautomatic firearms are "assault weapons" banned by § 53-202c. The "Avtomat Kalashnikov AK-47 type" is one of the listed semiautomatic firearms prohibited under § 53-202c. The court found that the initials "AK" stand for the name "Avtomat Kalashnikov." Kalashnikov designed the firearm in 1947, and it was manufactured in Russian arsenals. The AK-47 was manufactured as a full automatic machine gun with select fire options. Osika testified that to his knowledge, the only weapon manufactured by Kalashnikov that fired in semiautomatic mode was a variant of the AK-47 known as the AK-74.

The defendant argues that the term "Avtomat Kalashnikov AK-47 type," properly interpreted, includes only those "Avtomat Kalashnikov" firearms based on the AK-47 model that are semiautomatic firearms.[4] He

---

[4] The defendant bases his argument, in part, on his interpretation of *Benjamin* v. *Bailey*, 234 Conn. 455, 486–87, 662 A.2d 1226 (1995). He argues, at length, that because *Benjamin* interpreted "Auto-Ordnance Thompson type"

argues that the term does not include any clones, duplicates or knockoffs manufactured by any other governments or private entities. The defendant contends that legislative history supports his interpretation of the statute and should be taken into account in construing the term "Avtomat Kalashnikov AK-47 type." The state disagrees with the defendant's interpretation and argues that the term encompasses weapons based on the Kalashnikov design, covering semiautomatic versions regardless of the manufacturer.

Well established principles of statutory construction lead us to the conclusion that the defendant's interpretation of § 53-202a is incorrect. "[S]tatutory language does not become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.) *State* v. *Miranda*, supra, 274 Conn. 740 (*Borden, J.*, concurring). When the statute in question is one of a criminal nature, it nevertheless "must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . . In other words, [n]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there

to include only those Auto-Ordnance Thompson firearms that share characteristics similar to the other weapons listed in General Statutes (Rev. to 1999) § 53-202a; *Benjamin* v. *Bailey*, supra, 486–87; this court is bound to interpret "Avtomat Kalashnikov AK-47 type" to include only those Avtomat Kalashnikov firearms that share characteristics similar to the other weapons listed in § 53-202a. We disagree.

*Benjamin* made a distinction with respect to AK-47 and MAC "types" and the Auto-Ordnance Thompson "type." Id., 485–86. As to the latter, *Benjamin* noted that unlike the other two "types," the term Auto-Ordnance Thompson was claimed to be facially vague "*not* because no firearm comes within its core, but because too many firearms do." (Emphasis in original.) Id., 486. For that reason, our Supreme Court "read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." (Internal quotation marks omitted.) Id. The court therefore concluded that "the phrase Auto-Ordnance Thompson type should be interpreted to include only those Auto-Ordnance Thompson firearms that share characteristics similar to the other weapons listed in § 53-202a." (Internal quotation marks omitted.) Id., 486–87.

is a presumption of purpose behind every sentence, clause or phrase . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 434–35, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

After designating all selective fire weapons as assault weapons, the legislature listed a number of specific semiautomatic weapons as assault weapons. Only three of the semiautomatic weapons specified in § 53-202a have the word "type" after the name. The word "type" is a general designation following the name of a very specific automatic weapon. "[W]here a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." (Internal quotation marks omitted.) *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 413, 429 A.2d 905 (1980).

The word "type" is not defined in the assault weapons statutes. "[W]here a statute does not define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Boyd*, supra, 272 Conn. 79 n.5. According to the American Heritage Dictionary of the English Language (New College Ed. 1981), the word "type" is defined as: "1. A group of persons or things sharing common traits or characteristics that distinguish them as an identifiable group or class; a kind; category."

Applying the rules of statutory construction, we conclude that the statutory term "Avtomat Kalashnikov AK-47 type" is clear and unambiguous.[5] The only logical interpretation is one that encompasses semiautomatic

[5] Because the term is clear and unambiguous, we may not consider extra-textual sources. See General Statutes § 1-2z.

weapons modeled after an AK-47.[6] That definition would include those semiautomatic weapons that share common characteristics of the AK-47. That conclusion comports with the common and ordinary meaning of the word "type" and the rule of ejusdem generis. See *Eastern Connecticut Cable Television, Inc.* v. *Montville,* supra, 180 Conn. 413.

The extensive testimony at trial, including the physical comparison of a Maadi MISR with an AK-47 in a demonstration to the court, led to the court's conclusion that the weapon possessed by the defendant in the incident on June 4, 2000, was a semiautomatic firearm of the Avtomat Kalashnikov AK-47 type. We conclude that the defendant's conviction under § 53-202c did not violate his due process rights because, as a matter of law, the Maadi MISR is an "assault weapon" as defined by § 53-202a.

## II

The defendant next claims that the court violated his due process rights by failing to conclude that § 53-202a is vague as applied to him under the circumstances of this case.[7] The defendant argues that the tripartite test used by the state police, described by Osika and utilized at trial to determine whether the Maadi MISR weapon

[6] The defendant contends that the legislature intended to include only those semiautomatic weapons manufactured by Kalashnikov. According to Osika's testimony, the AK-47 was manufactured by the Russians as an automatic machine gun with select fire options. To Osika's knowledge, the only variant of the AK-47 manufactured by Kalashnikov as a semiautomatic is the AK-74. Because the AK-74 is the only possible weapon to come within the defendant's definition, it would have been logical for the legislature to have specifically listed the AK-74 as a prohibited weapon instead of using the general term "type" after AK-47.

[7] On appeal, the defendant does not argue that General Statutes (Rev. to 1999) § 53-202a is facially vague. Our Supreme Court already has determined that the provisions contained in § 53-202a are sufficiently clear to satisfy the due process requirements of facial vagueness analysis. *Benjamin* v. *Bailey,* 234 Conn. 455, 487, 662 A.2d 1226 (1995).

is an AK-47 "type" assault weapon, violated his right to notice and subjected him to discriminatory enforcement.[8]

"A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, [and the court makes] every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . .

"The general rule is that the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the particular facts at issue. . . . To do otherwise, absent the appearance that the statute in question intrudes upon fundamental guarantees, particularly first amendment freedoms, would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the

---

[8] The state argues that the defendant's claim is not reviewable because it was not raised at trial. It is clear, however, that the defendant argued, and the court considered, the claim that the statute was vague as applied to him under the circumstances of this case. The court stated in its decision: "Now, [defense counsel], you make the argument that were that even to be the case, [then Chief] Justice Peters [writing for the Supreme Court in *Benjamin* v. *Bailey*, 234 Conn. 455, 487, 662 A.2d 1226 (1995)] indicated that that doesn't mean that [§] 53-202a might not be vague in its application to any specific case, and so I took that into account as well. And it appears to me that it is not vague and, thus, not unconstitutional as applied to this particular case, as the defendant had notice, in my view, that possession of the weapon in question, that is, exhibit three, was in violation of the definition of an AK-47 type as set forth in General Statutes § 53-202c." We treat the issue as preserved at trial. Accordingly, review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), is not necessary.

statute]." (Citation omitted; internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204–205, 848 A.2d 1206 (2004).

We conclude that the defendant has failed to show that the statute does not provide fair warning that it applied to the conduct at issue. The defendant argues that he could not know that the Maadi MISR that he was carrying on June 4, 2000, was a prohibited "Avtomat Kalashnikov AK-47 type" assault weapon. During trial, however, evidence was presented that indicated otherwise. The state introduced portions of the defendant's testimony from a prior trial, which was read into the record, indicating that the defendant considered the weapon he possessed to be an AK-47.[9] The defendant had fair notice that his weapon was banned under the statute.

The fact that the tripartite state police test was utilized by Osika in his comparison of the Maadi MISR with an AK-47 does not change our conclusion. Osika testified that in analyzing whether a particular weapon is an "AK-47 type," the state police determine whether it looks like an AK-47, works like an AK-47 and whether the parts can be interchanged with other AK-47 weapons. Osika compared the Maadi MISR with an AK-47 and demonstrated how the Maadi MISR satisfied each prong of the test.

---

[9] At the prior trial, the following colloquy occurred:

"[The Prosecutor]: Did you indicate that you purchased the weapon that you went to the Fireside [Restaurant] with, [the] AK-47?

"[The Defendant]: Yes. Yes.

\* \* \*

"[The Prosecutor]: And [your friend] hooked you up with the person who sold you the AK-47?

"[The Defendant]: Yes.

"[The Prosecutor]: Did you have a permit for that?

"[The Defendant]: No, I did not.

"[The Prosecutor]: Is that weapon registered with the Connecticut state police, being that it's an assault weapon?

"[The Defendant]: No, it's not."

The defendant argues that the use of that test, developed by the state police after the incident on June 4, 2000, makes the statute unconstitutionally vague as applied to him. The test, however, is nothing more than a tool, which the court may find helpful or not, in its determination of whether the Maadi MISR is an AK-47 type weapon. As the court noted in its decision, utilization of the test was a valid way to determine whether the particular weapon was of the "type" prohibited by the statute. The court stated that "the weapon was virtually identical in appearance, the inner workings were the same, and the parts between the Maadi and AK-47 were interchangeable. . . . Exhibit three [the weapon at issue] was, in effect, an AK-47 type weapon, which was simply made by a different manufacturer and bore a different name." Under those circumstances, the defendant has not shown that he was the victim of arbitrary enforcement practices, and his claim of statutory vagueness fails.

The judgment is affirmed.

In this opinion the other judges concurred.

