## BENJAMIN MAGEE *v.* COMMISSIONER OF CORRECTION
### (AC 27071)

Harper, Lavine and Mihalakos, Js.

Argued September 20, 2007—officially released January 8, 2008

*Mary Boehlert*, special public defender, for the appellant (petitioner).

*Richard T. Biggar*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Henri Alexandre*, assistant attorney general, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Benjamin Magee, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the court improperly upheld the determination of the respondent, the commissioner of correction, that he was not entitled to good time credit, as provided by General Statutes § 18-7a, for serving part of a period of probation. We affirm the judgment of the habeas court.

The underlying facts and procedural history are not in dispute. In October, 1988, the petitioner was arrested and, under docket number CR-88-175427, charged with assault in the first degree and robbery in the first degree, among other charges. On June 12, 1989, pursuant to a plea agreement, the petitioner was sentenced to a term

of incarceration of thirty years, suspended after seventeen years, followed by five years of probation. Under the relevant provision of our good time credit statute, the petitioner was eligible to earn a reduction in his sentence "by good conduct and obedience to the rules which have been established for the service of his sentence . . . as such sentence is served . . . ." General Statutes § 18-7a (c). Having earned a reduction in his sentence, the petitioner was released from prison on December 27, 2000, when he began to serve his term of probation.

The petitioner successfully had served 764 days of his five year term of probation when, on January 30, 2003, he was arrested and, under docket number CR-03-013701, charged with possession of narcotics, among other charges. After his release on bond for those charges, and as a result of the arrest related thereto, the petitioner was arrested on May 1, 2003, and, under docket number CR-88-175427, charged with having violated the terms of his probation.

The petitioner entered into a plea agreement with the state with regard to both pending cases. In accordance therewith, on August 21, 2003, the trial court sentenced the petitioner under docket number CR-03-013701 to a term of incarceration of fifteen years, execution suspended after five years, followed by three years of probation. The court sentenced the petitioner under docket number CR-88-175427 to a term of incarceration of seven years, to be served concurrently with the sentence imposed under docket number CR-03-013701. The sentence imposed following the revocation of probation under docket number CR-88-175427 was a portion of the unexecuted sentence imposed on June 12, 1989. This sentence was for offenses committed in 1988, and, thus, the petitioner was eligible to earn good time credit

with regard to the sentence imposed under docket number CR-88-175427.[1]

In an amended petition for a writ of habeas corpus, filed in June, 2005, the petitioner challenged the respondent's calculation of his sentence insofar as she refused to "credit toward" his sentence in CR-88-175427 the 764 days of probation that he successfully served between December 27, 2000, and January 30, 2003. The respondent argued that she had calculated the petitioner's sentences in accordance with the law. Following a hearing, the habeas court issued a memorandum of decision denying the petition for a writ of habeas corpus. Essentially, the court concluded that there was no support in law for the petitioner's interpretation of the good time credit statute. The court concluded that days spent on probation, as distinguished from days spent as an inmate or a parolee, were not relevant to the application of the statute. The court subsequently granted the petition for certification to appeal to this court, and this appeal followed.

The petitioner bases his claim on the good time credit statute, which provides in relevant part: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of such sentence, earn a reduction of his sentence as such sentence is served . . . ." General Statutes § 18-7a (c). The petitioner argues: "As the . . . offense for which he was sentenced was committed during October, 1988, and because the time a defendant spends on probation is

---

[1] In light of the offense date for the charges brought under docket number CR-03-013701, the petitioner was not eligible to earn good time credit with regard to the sentence imposed under that docket number. See General Statutes § 18-100d (good time credit cannot be earned by persons who are convicted of crimes that occurred on or after October 1, 1994).

part of the overall effective sentence imposed by the court . . . he is entitled to good time credit for the successful time he spent on probation as part of his sentence." The petitioner further argues that the word "imprisonment" used in the statute does not merely entail incarceration, but any confinement of a defendant's liberty. According to the petitioner, "during the entire term of his sentence, including his time spent on probation, he was imprisoned by his sentence, as probation is a restriction on his liberty."

As the material facts are not in dispute, the issue is whether, as a matter of law, the court properly concluded that the petitioner's sentence under CR-88-175427 should not be reduced by the days he successfully spent on probation. The resolution of the claim crafted by the petitioner is based on the proper application of the good time credit statute and, thus, is one of statutory interpretation. Accordingly, we will afford it plenary review. See *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 816, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003).

"When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 745, 930 A.2d 644 (2007). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

The petitioner's claim hinges on his assertion that the phrase "term of imprisonment," as used in § 18-7a

(c), encompasses time spent on probation. Our legislature did not define "imprisonment,"[2] yet this fact alone does not render the phrase at issue ambiguous. "[W]here a statute does not define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 136, 887 A.2d 950, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006); see also *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 269, 931 A.2d 290 (2007) (appropriate to interpret statutory language "consistent with its commonly approved meaning"). Black's Law Dictionary (6th Ed. 1990) defines "imprisonment," in relevant part, as follows: "The detention of a person contrary to his will. The act of putting or confining a person in prison. The restraint of a person's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion. . . . Any unlawful exercise or show of force by which [a] person is compelled to remain where he does not wish to be." Webster's Third New International Dictionary defines "imprisonment," in relevant part, as "the act of imprisoning or the state of being imprisoned" and "constraint of a person either by force or by such other coercion as restrains him within limits against his will." "Imprison" is defined as "to put in prison: confine in a jail" and "to limit, restrain or confine as if by imprisoning." Webster's Third New International Dictionary.

As these definitions reflect, "imprisonment" commonly and primarily refers to a condition of physical confinement, usually by means of coercion, in a prison. These definitions also reflect that the word "imprisonment" can be used in a more figurative sense to refer

[2] Compare General Statutes § 53a-35b, defining "life imprisonment" as "a definite sentence of sixty years, unless the sentence is life imprisonment without the possibility of release . . . in which case the sentence shall be imprisonment for the remainder of the defendant's natural life."

generally to a condition of restraint or confinement but not one imposed by the sturdy walls of a correctional facility. It is this less common and secondary definition that the petitioner urges us to utilize in our interpretation of the statute. "A dictionary is nothing more than a compendium of the various meanings and senses in which words have been and are used in our language. A dictionary does not define the words listed in it in the sense of stating what those words mean universally. Rather, it sets out the range of meanings that may apply to those words as they are used in the English language, depending on the varying contexts of those uses." *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 250, 720 A.2d 879 (1998).

Viewed within the context of § 18-7a (c), the phrase "term of imprisonment" is susceptible only to one reasonable interpretation, which is that it should be afforded its customary and primary meaning, describing the physical confinement of a person in a correctional facility. There is no basis in law or logic to conclude that it describes or encompasses time spent on probation.[3] In considering the meaning of the phrase at issue, we also are strongly influenced by the manner in which our legislature has used identical terminology in other statutes. "It is a well-settled principle of [statutory] construction that . . . [w]e are obligated . . . to read statutes together when they relate to the same subject matter. . . . This is because of the presumption that the legislature intended to create a harmonious body

---

[3] Apart from his strained interpretation of the statutory language at issue, the petitioner asserts that *State* v. *Strickland*, 39 Conn. App. 722, 667 A.2d 1282 (1995), cert. denied, 235 Conn. 941, 669 A.2d 577 (1996), supports his claim because it holds that there is "no meaningful distinction between supervision through incarceration and supervision through probation in order to comply with a sentence of imprisonment imposed upon a defendant." *Strickland* did not involve good time credit, and the petitioner's tortured interpretation of *Strickland*'s holding does not shed light on the issue presented.

of law." (Citation omitted; internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 653–54, 687 A.2d 134 (1997). Our review of other relevant statutes soundly reinforces our conclusion that the legislature's use of the phrase "term of imprisonment," not merely the word "imprisonment," neither describes nor encompasses time spent on probation.

For example, General Statutes § 53a-28 (b) provides: "Except as provided in section 53a-46a, when a person is convicted of an offense, the court shall impose one of the following sentences: (1) A term of imprisonment; or (2) a sentence authorized by section 18-65a or 18-73; or (3) a fine; or (4) a term of imprisonment and a fine; or (5) a *term of imprisonment*, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a *period of probation* or a period of conditional discharge; or (6) a *term of imprisonment*, with the execution of such sentence of imprisonment suspended, entirely or after a period set by the court, and a fine and a *period of probation* or a period of conditional discharge; or (7) a fine and a sentence authorized by section 18-65a or 18-73; or (8) a sentence of unconditional discharge; or (9) a term of imprisonment and a period of special parole as provided in section 54-125e." (Emphasis added.)

General Statutes § 53a-31 (a) provides in relevant part: "A *period of probation* or conditional discharge commences on the day it is imposed, except that, where it is preceded by a *sentence of imprisonment* with execution suspended after a period of imprisonment set by the court, it commences on the day the defendant is released from such imprisonment. . . ." (Emphasis added.)

General Statutes § 53a-32 sets forth principles regarding violation of probation proceedings. Section 53a-32

(b) provides in relevant part: "If such violation [of probation] is established, the court may . . . revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a *term of imprisonment,* all or a portion of which may be suspended entirely or after a period set by the court, followed by a *period of probation* with such conditions as the court may establish. . . ." (Emphasis added.)

These enactments unambiguously reflect that the legislature consistently refers to imprisonment and probation as separate and distinct forms of punishment, not as conceptually interchangeable forms of punishment or forms of punishment that are one in the same.[4] Such usage is consistent with the different natures and purposes of the two forms of punishment. As a fundamental observation, inmates or prisoners are "in the custody of the Commissioner of Correction or confined in any institution or facility of the Department of Correction until released from such custody or control, including any person on parole." General Statutes § 18-84. In contrast, "[w]hen a person is sentenced to a period of probation, he . . . shall be placed under the supervision of the Court Support Services Division." General Statutes § 53a-29 (c).

"Good time credit is a creation of legislative grace." *Mitchell* v. *Commissioner of Correction,* 94 Conn. App.

[4] See also General Statutes § 18-73 (concerning confinement of male children and youths) and General Statutes § 18-65a (concerning confinement of young and teenage women), wherein the legislature distinguished between "incarceration" and "probation" as separate aspects of punishment. Other legislative enactments unmistakably reflect that the legislature's use of the word "imprisonment" does not describe or encompass time spent on probation but confinement in the custody of the commissioner. See, e.g., General Statutes § 17a-520 (concerning commitment at expiration of term of imprisonment); General Statutes § 18-7 (concerning powers and duties of warden as well as punishment and reward of inmates); General Statutes § 18-18 (concerning escaped prisoners).

210, 213, 893 A.2d 445, cert. denied, 278 Conn. 917, 899 A.2d 622 (2006). Section 18-7a (c) is plain and unambiguous; it does not apply to time spent on probation.[5] Having rejected the petitioner's interpretation of the statute, we conclude that there is no basis in law to justify his claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The petitioner argues that General Statutes § 18-7a (c) applies to time spent on probation and, thus, applies to the 764 days that he spent on probation, a portion of the five year probationary term imposed on him. The petitioner further argues that by operation of the good time credit statute, an equivalent number of days should be deducted from the seven year term of imprisonment to which he was sentenced under docket number CR-88-175427, after he violated the terms of his probation. Even if we assume arguendo that the petitioner had a statutory right to earn good time credit while on probation, the petitioner nevertheless does not justify in any manner his assertion that such credit should not be calculated in accordance with the precise formula codified in the statute, let alone why such credit would be applied to a subsequent term of imprisonment rather than to his probationary term. In other words, apart from clearing the principal hurdle of demonstrating that § 18-7a (c) applies to time spent on probation, the petitioner's suggested application of the statute to the particular facts of this case plainly belies any reasonable interpretation of the statute.