ELLIN CURLEY *v.* LAURENCE J. KAISER ET AL.
(AC 29031)

Bishop, Harper and Cretella, Js.

Argued September 16, 2008—officially released January 20, 2009

*Douglas J. Varga,* for the appellant-appellee (plaintiff).

*Alexander J. Trembicki*, for the appellee-appellant (substitute defendant).

*Opinion*

HARPER, J. The plaintiff, Ellin Curley, appeals from the summary judgment, rendered by the trial court in favor of the substitute defendant Karen Kaiser, administratrix of the estate of Laurence J. Kaiser.[1] On appeal, the plaintiff claims that the court improperly granted the defendant's motion for summary judgment by concluding that there were no genuine issues of material fact as to whether (1) Kaiser was a partner at the time of his death under a partnership agreement with the plaintiff and (2) the partnership was terminated because the affairs or business of the partnership had not been completed at the time of Kaiser's death. The defendant cross appeals, claiming that the court improperly concluded that as a result of granting the motion for summary judgment, the defendant's counterclaim became null or was no longer viable. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues presented in these appeals. The plaintiff alleged the following facts in her complaint. The plaintiff and Kaiser were formerly married to one another. In 1986, the plaintiff and Kaiser became business partners in a partnership named K& K Associates (K&K).[2] In 1998, Kaiser transferred his interest in K&K to the plaintiff. As a result, the plaintiff was left as the sole partner in K&K. Approximately

---

[1] The defendant Laurence Kaiser died on November 24, 2005. Karen Kaiser, in her capacity as the administratrix of the estate of Laurence Kaiser, was substituted as a defendant, and we refer to her as the defendant in this opinion. All references to Kaiser in this opinion are to Laurence Kaiser. The plaintiff also named K&K Associates as a defendant; however, K&K Associates is not a party to this appeal.

[2] The plaintiff's mother was also a business partner; however, in 1998, the plaintiff's mother withdrew as a partner.

three years after Kaiser transferred his interest in K& K to the plaintiff, Kaiser sought to obtain the plaintiff's interest in an entity named Alpine Focus Fund, LP (Alpine). In 2001, when Kaiser was unable to secure the plaintiff's Alpine interest for himself, the plaintiff and Kaiser entered into an agreement (2001 amendment) that amended and revived their former partnership in K&K. The 2001 amendment provided Kaiser with an Alpine interest via a partnership interest in K&K. Specifically, the 2001 amendment provided in relevant part that (1) the partners would invest K&K's capital into Alpine, (2) the interest in Alpine would be held in the plaintiff's name, on behalf of and for the benefit of K&K, (3) the ownership percentage in the opening capital account for Kaiser and the plaintiff would be 20 and 80 percent, respectively, and (4) a specified formula would determine the value of the closing capital account.[3]

The plaintiff further alleged that after the 2001 amendment was created, Alpine, which was valued at $980,000, was the only asset held by the parties under the K& K partnership. The ownership interest in the opening capital account was valued at $196,000 for Kaiser and $784,000 for the plaintiff. In 2002, the value of Alpine decreased significantly, which resulted in the plaintiff's selling K&K's interest in Alpine for approximately $119,000. The plaintiff alleged that on the basis of the 2001 amendment's formula for the closing capital account, the value of the ownership interest of Kaiser's closing capital account was approximately negative

[3] The formula for the closing capital account would be "adjusted, calculated and determined at the end of each Fiscal Period or subsequent calendar year (or portion of a calendar year) by an amount equal to the sum of (i) seventy-five (75%) per cent of the change in value of the Partnership's interest in Alpine . . . plus (ii) two and one-half (2.5%) per cent of the value of the greater of (x) [Kaiser's] Restated Opening Capital Account or (y) [Kaiser's] Restated Opening Capital Account as of the beginning of that subsequent calendar year, as adjusted in accordance herein . . . ."

$450,000, and the value of the plaintiff's interest was positive $569,000.[4] When the plaintiff attempted to collect from Kaiser his pro rata share of the losses suffered by Alpine, Kaiser refused to pay.

In response to Kaiser's refusal, the plaintiff filed a three count complaint against Kaiser and K&K.[5] In count one, the plaintiff alleged that because K&K was no longer engaged in acquiring, owning or selling investments, it should be dissolved and the business affairs wound up with a judicial accounting and settlement. In count two, the plaintiff alleged a breach of contract by Kaiser because he refused to pay his share of the loss in Alpine in violation of his obligation under the 2001 amendment.

Kaiser denied the plaintiff's allegations and filed a five count counterclaim.[6] A two day trial began on October 20, 2005. One month after the trial ended, while the parties awaited trial transcripts, Kaiser died. The administratrix of his estate was substituted as a party. See footnote 1. On August 7, 2006, while the parties were awaiting the court's ruling, the defendant filed a motion for summary judgment on counts one and two of the plaintiff's complaint. She argued that she was

---

[4] The plaintiff alleged that the specified formula called for Kaiser's share to have 75 percent of the change in Alpine's value from when the 2001 amendment was entered into by the parties to when the interest was sold, regardless if it was a gain or loss.

[5] Count three of the complaint alleged that Kaiser fraudulently misrepresented that he would have a 75 percent share of any change, gain or loss, in the value of K&K's interest in Alpine. The plaintiff alleged that she relied, to her detriment, on Kaiser's representation. In her appeal, the plaintiff challenges only the court's summary judgment with regard to counts one and two. Thus, we need not address count three in any further detail because the court's finding in favor of the defendant on the merits of count three is not an issue raised on appeal.

[6] The five counts alleged: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) mutual mistake; (4) breach of fiduciary duty; and (5) violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

entitled to judgment in her favor, as a matter of law, because no genuine issue as to any material fact existed. Specifically, the defendant claimed that Kaiser was a partner at the time of his death under the terms of the 2001 amendment. Accordingly, Kaiser was not liable to the plaintiff by virtue of a provision in the 2001 amendment stating that upon Kaiser's death, if he was still a partner, K&K was to terminate, and the value of Kaiser's ownership interest in the closing capital account would be zero, with no further obligation on the plaintiff or K&K. In opposition to the defendant's motion for summary judgment, the plaintiff asserted that the 2001 amendment's provision was not controlling because K&K was no longer in existence by the time of Kaiser's death, and, as a result, no partnership existed for Kaiser to be a partner.

On July 9, 2007, the court agreed with the defendant and rendered summary judgment in her favor as to counts one and two of the plaintiff's complaint. The court decided count three in favor of the defendant on the merits. See footnote 5. As to the defendant's counterclaim, the court concluded that as a result of its decision to render summary judgment, the counterclaim was "a nullity . . . ." See footnote 16. This appeal and cross appeal followed. Additional facts will be set forth as necessary.

I

THE APPEAL

Before considering the plaintiff's claims on appeal, we first note the well established standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable

to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Viola* v. *O'Dell*, 108 Conn. App. 760, 763–64, 950 A.2d 539 (2008). A material fact is "a fact which will make a difference in the result of the case." *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 379, 260 A.2d 596 (1969). "[I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. PFund Associates, Inc.*, 109 Conn. App. 560, 564, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008).

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Because the trial court rendered judgment for the defendants as a matter of law, our review is plenary and we must decide whether the trial court's conclusions are legally and logically correct and find support in the facts that appear in the record." (Citation omitted; internal quotation marks omitted.) *Alexander* v. *Vernon*, 101 Conn. App. 477, 482–83, 923 A.2d 748 (2007).

The plaintiff claims that the court improperly concluded, as a matter of law, that Kaiser was a partner in K&K at the time of his death under the 2001 amendment and that the partnership's affairs were not completed at the time of his death.[7] Specifically, the plaintiff

---

[7] Although the defendant's claims can be viewed as distinct and separate, our consideration of one necessarily implicates the other, and, consequently, we will discuss the claims together.

contends that the court improperly (1) applied General Statutes § 34-373,[8] (2) failed to rely on certain events that led to the dissolution and termination of the partnership prior to Kaiser's death, which the plaintiff posits demonstrated that the partnership was no longer in existence, and (3) concluded that a provision in the 2001 amendment governed after Kaiser's death. We will address each contention in turn.

A

The plaintiff first argues that the court improperly applied § 34-373 because the manner in which the court applied the statute deprived her of an assessment of damages in her favor because Kaiser died prior to the court's rendering judgment.[9] We disagree.

Initially, we must determine whether the court's conclusions find support in the record. In response to the motion for summary judgment, the plaintiff filed an affidavit and averred that K&K "could not and did not continue as an ongoing entity, since [Alpine] was its sole asset and sole reason for existing. . . . Since [Alpine] was liquidated on December 31, 2002, the partnership has been in limbo, waiting for a legal termination and *distribution of assets*." (Emphasis added.) At oral argument on the motion for summary judgment, the plaintiff argued that Kaiser "no longer was a partner on the date of liquidation of the sole partnership asset . . . [or] . . . when [the plaintiff] . . . demanded a final accounting . . . [or] by the point in time when [the plaintiff] is forced to file a lawsuit to obtain a judicial [dissolution]."

[8] General Statutes § 34-373 (a) provides in relevant part: "[A] partnership continues after dissolution only for the purpose of winding up its business. The partnership is terminated when the winding up of its business is completed."

[9] The plaintiff asserts that had the court rendered judgment prior to Kaiser's death, she may have been awarded damages and moneys owed to her under the 2001 amendment.

The court relied on § 34-373,[10] which provides that a partnership continues after dissolution for purposes of winding up its business. See footnote 8. The court noted that a fair reading of § 34-373 provides that "a partner is a partner under the terms of [the statute] until the winding up of the partnership affairs (or its business) is completed." As a result, the court concluded that K& K continued to exist beyond any point of dissolution, making Kaiser a partner at his death.

Nonetheless, on appeal, the plaintiff argues that the application of § 34-373 is "different when the winding up process is the subject of litigation, and the partnership's sole business purpose had ceased to exist years before." She further asserts that the partnership was " 'wound up' and completed upon the liquidation of the sole partnership asset [Alpine]."

Because the issue of whether the court properly interpreted and applied § 34-373 involves a question of statutory interpretation, our review is plenary. See *Magee* v. *Commissioner of Correction*, 105 Conn. App. 210, 214, 937 A.2d 72, cert. denied, 286 Conn. 901, 943 A.2d 1102 (2008). "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 575, 905 A.2d 1214, cert. denied, 280 Conn. 942, 943, 912 A.2d 479 (2006). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes.

---

[10] As noted by the court, although the terms of the original partnership agreement provide that New York law is to be applied to resolve disputes arising under the partnership agreement, the court concluded that the issue of whether the laws of the state of Connecticut or the state of New York applied was moot because the controlling section of each state's applicable statutory provision are almost identical. This is not an issue raised on appeal.

If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

Section 34-373 (a) provides in relevant part that "a partnership continues after dissolution only for the purpose of winding up its business. The partnership is terminated when the winding up of its business is completed." The plaintiff claims that the terms "winding up" and "completed," as used in § 34-373, are synonymous with the partnership winding up because it is subject to litigation or because the partnership completed the liquidation of assets, without a distribution. Although the terms "winding up" or "complete" are not defined by statute, we turn to General Statutes § 1-1 (a), which provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." Therefore, we look to the dictionary definition of the terms to ascertain their commonly approved meaning. See *Rivers* v. *New Britain*, 288 Conn. 1, 17, 950 A.2d 1247 (2008).

Webster's Third New International Dictionary defines "wind up" as "to put in order for the purpose of bringing to an end" and "complete" as "to bring to an end often into or as if into a finished or perfected state." Black's Law Dictionary (7th Ed. 1999) defines "winding up" as "[t]he process of settling accounts *and* liquidating assets in anticipation of a partnership's . . . dissolution." (Emphasis added.)

"A cardinal rule of statutory construction is that where the words of a statute [or rule] are plain and unambiguous the intent of the [drafters] in enacting the statute [or rule] is to be derived from the words used. . . . Where the court is provided with a clearly written

rule, it need look no further for interpretive guidance. . . . We are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words." (Citation omitted; internal quotation marks omitted.) *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 140–41, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006), cert. denied sub nom. *Reyad* v. *Bank of New York*, 549 U.S. 1265, 127 S. Ct. 1493, 167 L. Ed. 2d 229 (2007).

Viewed in the context of § 34-373, and on the basis of the common usage of the relevant terms, the partnership is terminated when *its business is put in order for the purpose of bringing the partnership to an end by the process of settling accounting and liquidating assets* and *when it is then brought to an end.* Consequently, we believe the court correctly applied § 34-373. At the time of Kaiser's death, K&K was not yet terminated because the partnership was in the process of putting its business affairs in order for the purpose of termination. Although the partnership assets of K&K had been liquidated prior to the plaintiff's filing her complaint, the assets were in an investment account pending distribution at the time of Kaiser's death.[11] As a result, we are not persuaded that the court improperly applied the statute to the facts of this case.

B

The plaintiff next argues that the court improperly failed to rely on certain events that, the plaintiff posits,

[11] The plaintiff argues that any delay in distribution was caused by the parties' awaiting a judgment by the court on the trial, which would have resolved the issue on how the assets should be distributed to the partners. This argument is not persuasive because there is no guarantee that had a judgment been rendered, prior to Kaiser's death, that K&K would have been terminated at that immediate moment, as it may have taken additional time to actually comply with the court's judgment.

led to the dissolution and termination of the partnership prior to Kaiser's death. We disagree.

The plaintiff argues that Kaiser's "death had no effect . . . under the partnership agreement because the partnership . . . had been dissolved and terminated by operation of law" upon liquidation of the sole partnership asset, Alpine, or at the latest upon filing of the lawsuit. The plaintiff asserts that a series of events,[12] which occurred prior to Kaiser's death, caused a dissolution and termination of the partnership that ended Kaiser's status as a partner. The court found that as of Kaiser's death, "the affairs or business of the subject partnership was not completed and therefore [Kaiser was] still being a partner, upon his demise . . . ."

After review of the record, we conclude that regardless of whether the court considered the various events enumerated by the plaintiff, no genuine issue of material fact existed as to whether those events altered Kaiser's partnership status. The act of dissolution is "merely the commencement of the winding up process. . . . Winding up the partnership business entails selling its assets, paying its debts, and distributing the net balance, if any, to the partners in cash according to their interests. . . . When the winding up is completed, the partnership entity terminates. . . . Dissolution is not in itself a termination of the partnership or the rights and powers of partners, for many of these persist during the winding up process. Rather, the term is descriptive of a change in the partnership relation which ultimately culminates in its termination, and is but a preparatory step to termination in which an accounting and a wind-up of the

---

[12] The events enumerated by the plaintiff were: (1) the sole partnership asset was liquidated; (2) Kaiser had refused the plaintiff's request for an accounting; (3) Kaiser had refused to participate in the winding up process; (4) the plaintiff was forced to file an action to seek a judicial dissolution, winding up and accounting of K&K's affairs; and (5) the trial concluded and the parties were preparing for posttrial briefing of the issues.

business are also necessary steps." 59A Am. Jur. 2d Partnership § 550 (2003). After dissolution, partners are still held to be liable, and have duties to maintain, amongst each other. See General Statutes §§ 34-377 and 34-378.

In this case, Kaiser's status as a partner was not altered by any of the events enumerated by the plaintiff because a dissolved partnership maintains legal existence, as provided in the plain meaning of § 34-373; see part I A; until termination, which occurs after all partnership affairs have been wound up.

C

Last, the plaintiff argues that the court improperly concluded that a provision in the 2001 amendment governed after Kaiser's death. We disagree.

Because this issue involves the interpretation of a contract, our review is plenary, and we must determine whether the court's conclusions find support in the record. "The law governing the construction of contracts is well settled. When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . Moreover, in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring

plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743–44, 945 A.2d 936 (2008). We examine the construction of the 2001 agreement mindful of the fact that we have a contract formed between two parties of relatively equal bargaining power. See id.

The plaintiff argues that the provision[13] of the 2001 amendment, affecting the existence of the partnership upon Kaiser's death, was not germane. In support of her argument, the plaintiff cites decisional law from other jurisdictions,[14] which hold that a partner's postdissolution death does not permit the enforcement of a provision in a partnership agreement governing the partnership's continued existence and operation following the death of a partner. See, e.g., *Parduhn* v. *Bennett*, 61 P.3d 982 (Utah 2002) (where partnership dissolves prior to partner's death, buy-sell agreement rendered ineffective), aff'd after remand, 112 P.3d 495 (Utah 2005); *Girard Bank* v. *Haley*, 460 Pa. 237, 242, 332 A.2d 443 (1975) ("[i]f . . . dissolution occurred during the lifetime of [the withdrawing partner seeking judicial dissolution and accounting] those portions of the agreement, which are concerned solely with the

---

[13] The provision, paragraph twelve of the 2001 amendment, provides: "Notwithstanding anything in the Agreement or herein to the contrary, upon the death of [Laurence Kaiser] (if he is a Partner upon his demise) the Partnership shall terminate, his Closing Capital Account shall be zero and there shall be no further obligation of the [plaintiff] or the Partnership to his estate or successors or assigns."

[14] The plaintiff cites cases outside our jurisdiction, in support of her argument, because there is no Connecticut case law that specifically addresses the effect of a postdissolution death on a provision, within a partnership agreement. But see footnote 15.

effect of the death of a partner, are not germane"); *Goergen* v. *Nebrich*, 12 Misc. 2d 1011, 174 N.Y.S.2d 366 (partnership agreement's death provisions apply only if dissolution occurred as result of partner's death), appeal dismissed, 7 App. Div. 2d 620, 179 N.Y.S.2d 677 (1958).

The plaintiff argues that those cases are relevant because they address how provisions within a partnership agreement should govern after a partnership's dissolution. She further asserts that the court should follow this decisional case law and conclude that the 2001 amendment's provision was not germane. The court, however, noted that the applicability of the provision at issue "does not depend on the *viability* [or the continued existence] of the partnership [because the partnership] was in the process of dissolution and winding up." (Emphasis added.) We agree with the court's interpretation of the provision.

In this case, the provision, as noted by the court, was not intended to govern issues related to the continued existence or operation of K&K upon the death of a partner. Rather, the provision explicitly governed the distribution of assets for the purpose of terminating the partnership upon a partner's death. See footnote 13. Additionally, in an affidavit submitted in support of her objection to the defendant's motion for summary judgment, the plaintiff expressly states that "[t]he underlying purpose of Paragraph 12 was to protect our children . . . . to make sure that they would not have to pay money up a generation to a living parent." Therefore, the type of agreement between the plaintiff and Kaiser, which was intended to wind up the partnership, was different from one intended to govern the continued existence of a partnership following the death of a partner.[15] The court properly enforced the 2001

[15] Our Supreme Court has noted that parties are allowed, during their lifetime, to "make an enforceable agreement as to the way in which the value of the interest of a deceased partner in the partnership assets is to

amendment's provision when it assessed the distribution of assets among the partners and concluded that Kaiser's ownership interest in the capital account was zero because Kaiser was still a partner at his death.

## II

## CROSS APPEAL

The defendant claims that the court improperly concluded that her counterclaim was no longer viable. We disagree.

On the basis of the court's decision to render summary judgment in favor of the defendant, the court concluded that the defendant's counterclaim was no longer viable.[16] As this issue is a legal determination, our review is plenary. See *Dockter* v. *Slowik*, 91 Conn. App. 448, 456, 881 A.2d 479 ("We use the plenary standard to review a trial court's conclusions of law. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the [court]." [Citation omitted; internal quotation marks omitted.]), cert. denied, 276 Conn. 919, 888 A.2d 87 (2005).

"Mootness is a threshold issue that implicates subject matter jurisdiction, which imposes a duty on the court to dismiss a case if the court can no longer grant practical relief to the parties. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change

be determined after his death." *Casey* v. *Hurley*, 112 Conn. 536, 542, 152 A. 892 (1931).

[16] As we understand it, the court's ruling, which states that the "defendant's counterclaim has become a nullity," meant that all five counts of the defendant's five count counterclaim were no longer viable on the basis of the court's determinations in rendering summary judgment in favor of the defendant.

in the condition of affairs between the parties." (Internal quotation marks omitted.) *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 547, 920 A.2d 316 (2007).

On cross appeal, the defendant argues that she should be given an opportunity to present her case for fraudulent misrepresentation because Kaiser was forced to defend against a partnership claim, after relying on the plaintiff's assertions, at the time the 2001 amendment was entered into, that no partnership was being created.[17] The defendant's counterclaim on fraudulent misrepresentation hinges on whether the former partnership between the plaintiff and Kaiser was revived by the 2001 amendment. To succeed, the defendant would have to show that the former partnership between the plaintiff and Kaiser was never intended to be revived by the 2001 amendment, and, as a result of the plaintiff's fraudulent behavior in alleging that a partnership did exist, the defendant was forced to defend against a partnership claim.

The court, however, in rendering summary judgment in favor of the defendant, concluded that a partnership did exist. The court's decision relied on the plaintiff's factual allegations that a partnership existed under the terms of the 2001 amendment. Because we agree with the court's conclusion that a partnership existed, the defendant could not prevail on her counterclaim because there was no practical relief to be granted.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[17] Although the defendant has filed a five count counterclaim against the plaintiff, the defendant solely challenges the court's decision as it relates to her counterclaim for fraudulent misrepresentation. As a result, the defendant's remaining four counts, which alleged breach of fiduciary duty, negligent misrepresentation, mutual mistake and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., are not issues briefed on appeal.