684 S.E.2d 566

**Frederick T. McKNIGHT, as Personal Representative of the Estate of Brooks Leon Thomas, Appellant,**

**v.**

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS and Just Care, Inc., Defendants,**

**of whom Just Care, Inc. is the Respondent.**

**No. 4615.**

Court of Appeals of South Carolina.

Heard April 23, 2009.

Decided Sept. 9, 2009.

382

J. Edward Bell, III, and C. Carter Elliott, Jr., both of Georgetown, for Appellant.

Mason A. Summers and William C. McDow, both of Columbia, for Respondent.

KONDUROS, J.

As personal representative of Brooks Leon Thomas's estate, Frederick T. McKnight filed a survival and wrongful death action against the South Carolina Department of Corrections (the Department) and Just Care, Inc.[1] after inmate Thomas committed suicide.  The trial court granted Just Care's motion

---

1. Just Care has a contract to provide the Department with medical and health services.

for summary judgment finding any deficiency in treatment was too attenuated from Thomas's death to have proximately caused it because he committed suicide over a year after his discharge. The trial court also determined Just Care did not owe Thomas a duty because he was not in Just Care's custody at the time of the suicide. McKnight appealed and we affirm.

## FACTS

The plea court sentenced Thomas to ten years' imprisonment after he pled guilty to armed robbery. Thomas entered the Department's custody on April 8, 2003. On September 14, 2003, Thomas reported he had swallowed ten razor blades and the following day the Department sent him to the Carolina Care Center (the Center).[2] A psychiatrist examined Thomas at the Center on September 17, 2003. During the examination, Thomas denied wanting to commit suicide but admitted he was "a little depressed." He also indicated he had "a history of life-long depression." Thomas was prescribed medications including Zoloft and was transferred back to the Department's custody on September 22, 2003.

On October 5, 2004, Thomas died after he hung himself while in the Department's custody. McKnight brought suit against the Department and Just Care for medical malpractice, negligence, wrongful death, and survival. McKnight alleged Thomas and his family members informed prison officials on numerous occasions that he was contemplating suicide. The complaint also contended prison employees beat and physically abused Thomas without justification. Just Care made a motion for summary judgment. McKnight opposed the motion arguing the affidavit of his expert witness, Dr. James Merikangas, provided evidence of proximate cause. That affidavit stated:

> These violations of the standard of care have proximately caused injuries and damages to the Plaintiff/Decedent in this case which may be summarized as follows:
>
> (A) Mr. Brooks Thomas was a patient at the Just Care/Columbia Care Center inpatient medical facility.... Had a proper examination been performed by the team

---

2. Just Care operates a prison hospital at the Center.

members of Just Care/Columbia Care Center (including a proper history), Mr. Thomas would have been committed and administered the appropriate treatment including antipsychotic medications over an appropriate time period. Because this was not properly carried out, Mr. Thomas suffered both mentally and physically after his discharge and before his death.

(B) As Mr. Thomas was not sent back to the [Department] with the proper discharge instructions or treatment plan, it is likely that Mr. Thomas suffered both mentally and physically before his death. Additionally, it is likely that Mr. Thomas was not sent back to Just Care/Columbia Care Center after September 22, 2003 as there was no proper follow up or discharge instructions sent to [the Department].

(C) The above mentioned breaches in the appropriate standard of medical care le[ ]d to a further decline in Mr. Thomas' overall mental health condition and likely contributed to his eventual death by suicide October 5, 2004.

The trial court granted Just Care's motion for summary judgment, finding McKnight presented no evidence Just Care owed Thomas a duty or any alleged negligence by Just Care proximately caused his death. McKnight filed a Rule 59(e), SCRCP, motion for reconsideration arguing in part the trial court failed to address the survival claim in its order. The trial court denied the motion and this appeal followed.

## STANDARD OF REVIEW

■ The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).

■■ In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving

party. *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003). Even if evidentiary facts are not disputed, if only the conclusions to be drawn from them are, the trial court should deny the motion for summary judgment. *Baugus v. Wessinger,* 303 S.C. 412, 415, 401 S.E.2d 169, 171 (1991). Summary judgment is not appropriate when further inquiry into the facts is desirable to clarify the application of law. *Tupper v. Dorchester County,* 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

## LAW/ANALYSIS

### I. Proximate Cause

McKnight contends the trial court erred in granting Just Care summary judgment because the mere passage of thirteen months' time between the alleged negligence and death does not preclude a finding of proximate causation. We disagree.

The plaintiff in a medical malpractice action must establish both proximate cause and negligence. *Hanselmann v. McCardle,* 275 S.C. 46, 48, 267 S.E.2d 531, 533 (1980). "To prevail in a negligence action, a plaintiff must demonstrate: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Platt v. CSX Transp., Inc.,* 379 S.C. 249, 258, 665 S.E.2d 631, 635 (Ct.App. 2008), *cert. pending.* "Negligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided." *Hanselmann,* 275 S.C. at 48–49, 267 S.E.2d at 533 (quoting *Hughes v. Children's Clinic, P.A.,* 269 S.C. 389, 398, 237 S.E.2d 753, 757 (1977)).

Proximate cause is the efficient or direct cause; the thing that brings about the complained of injuries. *Platt,* 379 S.C. at 266, 665 S.E.2d at 640. "Proximate cause requires proof of (1) causation in fact and (2) legal cause." *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990). Causation in fact is demonstrated by establishing the plaintiff's injury would not have occurred "but for" the

defendant's negligence, while legal cause is proved by establishing foreseeability. *Platt,* 379 S.C. at 266, 665 S.E.2d at 640. The court looks to the natural and probable consequences of the complained of act to determine foreseeability. *Vinson v. Hartley,* 324 S.C. 389, 400, 477 S.E.2d 715, 721 (Ct.App.1996). A plaintiff proves legal cause by establishing the injury occurred as a natural and probable consequence of the defendant's negligence. *Id.* "When the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability." *Eadie v. Krause,* 381 S.C. 55, 64, 671 S.E.2d 389, 393 (Ct.App.2008), *cert. pending.* When the cause of a plaintiff's injury may be as reasonably attributed to an act for which the defendant is not liable as to one for which he is liable, the plaintiff has failed to carry the burden of establishing the defendant's conduct proximately caused his injuries. *Mellen v. Lane,* 377 S.C. 261, 280, 659 S.E.2d 236, 246 (Ct.App.2008). "For an intervening act to break the causal link and insulate the tortfeasor from further liability, the intervening act must be unforeseeable." *Dixon v. Besco Eng'g, Inc.,* 320 S.C. 174, 180, 463 S.E.2d 636, 640 (Ct.App. 1995). Ordinarily, proximate cause is a question for the jury, but when the evidence is susceptible to only one inference, it becomes a matter of law for the court. *Platt,* 379 S.C. at 266, 665 S.E.2d at 640.

Although we did not find and the parties did not provide any South Carolina cases directly on point, other jurisdictions have contemplated situations similar to the one at hand. *See, e.g., Tolton v. Am. Biodyne, Inc.,* 48 F.3d 937, 944 (6th Cir.1995) (holding when the decedent committed suicide more than one month after his last visit to the hospital and received treatment from two other hospitals during that one-month period, the plaintiffs could not prove damages because of the time lapse and intervening medical treatment); *Darren v. Safier,* 207 A.D.2d 473, 615 N.Y.S.2d 926, 928 (1994) (finding the plaintiff had not established a hospital's alleged failure to follow its guidelines for suicidal patients was the proximate cause of a patient's suicide that occurred one month after his discharge from the hospital); *Paradies v. Benedictine Hosp.,* 77 A.D.2d 757, 759, 431 N.Y.S.2d 175 (1980) (citations omitted) ("[A]s a matter of law the decedent's suicide was not a proximate cause of any alleged negligence on the part of

defendants. Plaintiff has failed to present any evidence establishing a causal connection between the alleged acts of negligence and the subsequent suicide which occurred some three weeks after the decedent's release.").

However, McKnight points to two cases that discourage using the passage of time to show lack of proximate cause, although both cases involve situations in which the patient later harmed another person and not himself. The first case upon which McKnight relies held:

> Remoteness in time or space may give rise to the likelihood that other intervening causes have taken over the responsibility. But when causation is found, and other factors are eliminated, it is not easy to discover any merit whatever in the contention that such physical remoteness should of itself bar recovery. The defendant who sets a bomb which explodes ten years later, or mails a box of poisoned chocolates from California to Delaware, has caused the result, and should obviously bear the consequences.

*Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 673 N.E.2d 1311, 1332 (1997) (quoting *Prosser & Keeton on Torts* 283, § 43 (5th ed. 1984)), *superseded by statute on other grounds.* The court concluded:

> Thus, no fixed rule can be established as to how quickly the harm must occur in order to hold the defendant liable. Some courts have found periods ranging between three and a half months to two years and five months to be too remote, while other courts have found periods ranging from five and one-half months to three years not to be too remote. Physical or temporal remoteness, therefore, may be an important consideration in whether negligent conduct is a substantial factor in producing harm; but the mere lapse of time, in the absence of intervening causes, is not of itself sufficient to prevent the defendant's negligence from being the legal cause, regardless of how much time has passed.

*Id.* (citations omitted).

The other case upon which McKnight relies is very fact specific. In it, the Minnesota Supreme Court found:

> It is also a close question whether the shooting was foreseeable. The question is whether it was reasonably foreseeable

in July 1970 that (a) the patient would, a year and a half later, refuse his medication and have a reoccurrence of his illness and that (b) in the course of that reoccurrence, he would use his gun to shoot someone. The question before us is one of policy: Is the doctor's conduct so closely connected with the tragedy of the shooting that the law may allow a cause of action?

*Lundgren v. Fultz,* 354 N.W.2d 25, 28 (Minn.1984).

Because our search of South Carolina case law revealed no analogous situations, we find other states' jurisprudence instructive. As previously referenced, other states have found no proximate cause when a suicide occurred within weeks of the release. Although the courts in the cases McKnight cites found the remoteness of time was not sufficient to establish proximate cause, these cases involved the shooting of others. Therefore, we do not find them as relevant as cases in which the patient committed suicide.

Additionally, McKnight argues the cases on which the trial court relied all contained intervening acts in addition to the passage of time. Although some of the cases we rely upon contain intervening acts in addition to the passage of time, others do not. Further, in McKnight's complaint, he alleges employees, agents, and/or servants of the Department beat and/or physically abused Thomas without justification or provocation. The Department's summary of Thomas's medical records include several references to prison guards' using gas on him. Thomas's return to prison for thirteen months with no further treatment, especially considering his allegations of abuse and additional suicide attempts, constituted an intervening act sufficient to break the causal chain.

McKnight also relies upon the affidavit of his expert witness, Dr. Merikangas, to establish evidence of proximate cause. South Carolina courts have consistently held evidence must amount to more than speculation and conjecture to submit a case to the jury. *See Ellis v. Oliver,* 323 S.C. 121, 125, 473 S.E.2d 793, 795 (1996) ("When one relies solely upon the opinion of medical experts to establish a causal connection between the alleged negligence and the injury, the experts must, with reasonable certainty, state that in their professional opinion, the injuries complained of most probably resulted

from the defendant's negligence."); *Daves v. Cleary,* 355 S.C. 216, 229–30, 584 S.E.2d 423, 430 (Ct.App.2003) (alterations by court) (quoting *James v. Lister,* 331 S.C. 277, 286, 500 S.E.2d 198, 203 (Ct.App.1998)) ("In medical malpractice cases, the plaintiff must show through expert testimony that, 'in their professional opinion, the injuries complained of most probably resulted from the defendant's negligence ... [and] when it is the only evidence of proximate cause relied upon, it must provide a significant causal link between the alleged negligence and the plaintiff's injuries, rather than a tenuous and hypothetical connection.' "); *see also Jackson v. Bermuda Sands, Inc.,* 383 S.C. 11, 17, 677 S.E.2d 612, 616 (Ct.App.2009) (quoting *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 461, 494 S.E.2d 835, 841 (Ct.App.1997)) (applying the directed verdict standard to a summary judgment motion and holding "[a] jury issue is created when there is material evidence tending to establish the issue in the mind of a reasonable juror.... 'However, this rule does not authorize submission of speculative, theoretical, and hypothetical views to the jury. Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court. A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture, or speculation.' "). Dr. Merikangas's affidavit is at best nothing more than conjecture and speculation and thus, does not create any genuine issue of material fact. Therefore, the trial court properly granted summary judgment on the basis of lack of proximate cause.

## II. Duty

McKnight asserts the trial court erred in adopting the contention that a "duty of care to prevent suicide exists only on the part of a defendant who has custody of a suicidal person." We disagree.

"In a negligence action, a plaintiff must show the (1) defendant owes a duty of care to the plaintiff, (2) defendant breached the duty by a negligent act or omission, (3) defendant's breach was the actual and proximate cause of the plaintiff's injury, and (4) plaintiff suffered an injury or damages." *Sabb v. S.C. State Univ.,* 350 S.C. 416, 429, 567 S.E.2d 231, 237 (2002). "An essential element in a negligence cause

of action is the existence of a legal duty of care owed by the defendant to the plaintiff." *Platt,* 379 S.C. at 258, 665 S.E.2d at 635. Without such a duty, a plaintiff cannot establish negligence. *Id.* "In a negligence action, the court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff." *Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 334, 566 S.E.2d 536, 545 (2002).

South Carolina "has recognized a cause of action in negligence for breach of a duty to prevent a known suicidal patient from committing suicide" but in those cases the patient had not been discharged from the hospital at the time of the suicide. *See Bramlette,* 302 S.C. at 74, 393 S.E.2d at 917 (affirming the trial court's denial of defendant's directed verdict motion on basis of proximate cause when patient committed suicide while on a recreational outing with other patients and occupational therapist employed by hospital); *see also Hoeffner v. Citadel,* 311 S.C. 361, 368, 429 S.E.2d 190, 194 (1993) (*"Bramlette* does not impose strict liability on those with a duty to prevent suicide" "because health care professionals are subject to liability for failure to prevent suicide only when departure from the standards of their profession proximately causes their patient's suicide"); *Sloan v. Edgewood Sanatorium, Inc.,* 225 S.C. 1, 13, 80 S.E.2d 348, 353 (1954) (holding the issue of negligence was properly submitted to the jury and its finding of negligence was a reasonable inference because decedent had known suicidal tendencies and committed suicide while a patient at a psychiatric hospital). Other states have recognized that same duty and have noted "there is no justification for extending that duty beyond the patient's unconditional release." *Katona v. County of Los Angeles,* 172 Cal.App.3d 53, 59, 218 Cal.Rptr. 19 (1985), *superseded by statute on other grounds.* The California District Court of Appeal found:

> In the instant case, decedent's suicide occurred more than six weeks after she had been discharged from either the county's mental health facility or Somos Amigos. Moreover, there is no indication whatsoever that either hospital had any contact with decedent or her parents after her unconditional release. Under the circumstances, there would be no basis for imposing a duty on defendants to

control decedent's actions in an attempt to prevent her suicide.

*Id.*

The Florida District Court of Appeal has also found a hospital has no duty once a patient is released:

[A] hospital or sanatorium owes its patients or inmates a specific duty of care. If that duty is breached and as a result of such breach, the patient commits suicide or inflicts injury upon himself, the institution is liable. The duty is based solely on the fact of the patient's confinement in the hospital, and the hospital's ability to supervise, monitor and restrain the patient. Upon release of the patient, this duty ceases.

*Paddock v. Chacko*, 522 So.2d 410, 416 (Fla.Dist.Ct.App.1988) (citations omitted). The Oklahoma Supreme Court has found although a duty exists when the decedent is a patient being treated for mental illness at a hospital, there is no duty when the decedent is an outpatient. *Runyon v. Reid*, 510 P.2d 943, 950 (Okla.1973). The court noted "defendants could not exercise the degree of control over decedent which a hospital could exercise over a patient." *Id.*

The New York Supreme Court, Appellate Division, has provided a compelling argument against expanding a hospital's duty in this area:

The prediction of the future course of a mental illness is a professional judgment of high responsibility and in some instances it involves a measure of calculated risk. If a liability were imposed on the physician or the State each time the prediction of future course of mental disease was wrong, few releases would ever be made and the hope of recovery and rehabilitation of a vast number of patients would be impeded and frustrated. This is one of the medical and public risks which must be taken on balance, even though it may sometimes result in injury to the patient or others.

*Taig v. State*, 19 A.D.2d 182, 183, 241 N.Y.S.2d 495 (1963).

■ Although South Carolina has found a hospital owes a duty to a patient while that patient is still in the custody of the hospital, it has not determined whether the duty continues once the patient is released. McKnight argues *Bramlette*

extended that duty. However, *Bramlette* is distinguishable from the present case because in *Bramlette* the patient had not been released and was on a hospital sanctioned trip at the time of the suicide. 302 S.C. at 69–70, 393 S.E.2d at 915. Here, Thomas had been discharged from the hospital. States that have considered whether the duty continues once the patient is released have found the duty ceases once the patient is released. McKnight has not provided case law from any state that has expanded the duty. Accordingly, the trial court properly granted summary judgment on the basis the Hospital had no duty.

### III. Survival Causes of Action

McKnight alleges the trial court erred in failing to address the survival action in its order. We disagree.

The trial court's findings on proximate cause and duty apply to the survival action as well. While Just Care had a duty to Thomas while he was at its hospital, he did not harm himself while in Just Care's custody. The complaint's survival action seems to allege Thomas tried to commit suicide unsuccessfully after Just Care discharged him. As with the wrongful death claim, Thomas's return to prison is an intervening cause that breaks the causal connection. Accordingly, the trial court properly granted summary judgment on the survival cause of action.

### CONCLUSION

The trial court properly granted Just Care's summary judgment motion based on lack of proximate cause and duty as to both the wrongful death and survival causes of action. Accordingly, the grant of summary judgment is

**AFFIRMED.**

HUFF and WILLIAMS, JJ., concur.