MEMORANDUM OF DECISION
GUERNSEY, C.J.
On August 19, 2012 the Plaintiff accompanied her friend Antoinette Hine to the Mohegan Sun Hotel, with plans to attend a concert that night at which Train would be performing. Ms. Hine is quite adept at securing “comp” tickets and other benefits (including rooms at the Mohegan Sun Hotel), and testified that she had attended 100 or more concerts at the Arena (the Plaintiff estimated she had attended perhaps 15 concerts in addition to the 43 evidenced by ticket stubs in Exhibit P-8). In the course of being shown to her seat during the opening act, the Plaintiffs foot slipped and she fell, either backwards down the steps [1] or with her body further up the steps,[2] as a result of which she sustained personal injuries. The instant action was brought under the Mohegan Torts Code, MTC § 3-241 et seq., alleging, inter alia, defects related to a slippery substance on the floor, inadequate lighting, and that an employee of the Defendant[3] approached the Plaintiff when it was unsafe to do so.
At the commencement of trial, with the consent of the parties, the Court conducted a view of the scene of the accident,[4] which was extremely helpful in understanding the various versions of how the accident took place. The Plaintiff and Ms. Hine had seats in Row G; Row F was one Row[7] further down, closer to the stage. Between Row F and Row G is what might be termed a middle step the width of the aisle down which patrons would travel to reach their seats, perhaps three and one-half feet wide. Other than the middle steps in each aisle, the floors of the Rows are uninterrupted, and have anti-skid material attached to the edges of all steps and middle steps throughout the aisles.
During the view, each of the witnesses re-enacted her version of the events preceding Plaintiffs fall. The Plaintiff testified that, after presenting their tickets to *273 the usher, the three of them proceeded down the aisle towards Row G, with Ms. Hine first, the usher second, and the Plaintiff last. This order is somewhat confirmed by the testimony of Ms. Hine.[5] The recollection of Tara Braatz, the usher, is that she preceded both women and stood on the middle step between Rows F and G. All witnesses are in agreement that Ms. Hine was the first to enter Row G and take a seat.
According to the Plaintiffs testimony, the usher was standing at either on Row G[6] when Ms. Hine took her seat or the middle step between Rows G and F[7]. Plaintiffs description of where the usher was standing roughly corresponds with the usher’s testimony that she was standing on the middle step between Rows F and G. The Plaintiff next described that she had to go around Ms. Hine and the usher and down one step because “[tjfaere wasn’t room for me to just wait there so she can sit me down..It is difficult to understand why the Plaintiff simply did not wait the very few seconds it took Ms. Hine to take her seat[8] and then sit down, as Ms. Hine was able to do safely. Plaintiff testified that after Ms. Hine was seated, the usher told the Plaintiff that she could come up and then the usher stepped down to Row F, at which point the Plaintiff (facing up towards the higher seats) moved slightly to her right[9]. As described by the Plaintiff:
The usher sat [Ms. Hine], She came down to get me—she’s coming like towards me, and I moved over a little bit for her to lead me and that’s when my foot went back. It just went back very quickly and I was at the side where there wasn’t anything to grab on to. So I fell down two possibly three stairs. It just happened very quickly.
As clarified by the view of the scene, the Plaintiff was standing on Row F, not on the middle step between Rows F and G. As previously noted, whereas the middle step is only approximately three and one-half feet in width, Row F, like the other Rows, is continuous and Plaintiff could have safely moved to the side as far as was necessary. The Plaintiffs demonstration showed that she actually stepped back somewhat, and fell backwards as a result of her heel having nothing under it.
The usher’s recollection is that Ms. Hine sat in Row G, seat 19 and that the Plaintiff fell while standing in front of seat 20. The testimony of Ms. Hine relates how, after taking her seat, enough time elapsed for her to engage in an argument with the girl in front of her (presumably Row F) “who almost flung a cup of beer in my face” and whose boyfriend then took it away from her, before the Plaintiff fell, Ms. Hine did *274 not witness the fall, but asserts that Plaintiff fell on the steps, not the aisle. DISCUSSION
Under the Mohegan Torts Code, negligence is defined as follows:
Negligence means conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances. Where applicable, the rule of actual or constructive notice shall be applied to determine negligence; negligence shall not be deemed to arise from the mode of operation.
MTC § 3-245. In the event that negligence is established, it is incumbent on the Plaintiff to establish that the same was the proximate cause of her injuries. “[A] causal relation between the defendant’s wrongful conduct and the plaintiff’s injuries is a fundamental element without which a plaintiff has no case.” Teitelman v. Bloomstein, 155 Conn. 653, 657, 236 A.2d 900 (1967). On this issue the Connecticut Appellate Court has required that to establish causation, the plaintiff must do so without resort to conjecture. Yarasavich v. Mohegan Tribal Gaming Authority, 4 G.D.R. 66, 67 (2010), quoting Alexander v. Town of Vernon, 101 Conn.App. 477, 488, 923 A.2d 748 (2007).
The evidence at trial failed to show that there was any “substance ... causing danger to the plaintiff and other patrons walking in said area.”[10] Plaintiffs own testimony, when asked whether there was any substance on the floor was “I didn’t look for anything”, coupled with the testimony of every other witness and the security report, establishes that no one observed any such substance. As to the claim of inadequate lighting, although Plaintiffs and Ms. Hine’s testimony contradicted that of the usher as to whether there was a performance on stage with the lights dimmed at the time of her fall, Plaintiffs testimony did nothing to link allegedly inadequate lighting with her fall.
Plaintiffs principal claim of negligence, asserted at trial, is that the usher was negligent in approaching her, forcing her to move to the side. Her counsel argued vigorously that by stepping aside she was merely being polite, for which she should not be penalized, a position with which the Court agrees. However, that not only falls short of establishing the conduct of the usher as negligent, but also, assuming arguendo that it was negligent, fails to establish that the same was the proximate cause of her fall, given that she had the entire Row F to move into. As the view and demonstration as well as the testimony showed, there was no contact between the usher and the Plaintiff. The Connecticut Appellate Court has noted that in a negligence case the Plaintiff must remove issues of negligence and proximate cause from the field of conjecture and speculation.

. According to the Plaintiff’s testimony.

. According to the testimony of Annette Hine. Ms. Braatz's testimony contradicted both.

. The reference is to Ms. Tara Braatz, the usher showing the Plaintiff to her seat.

.Prior to the view, the parties stipulated that each of the three witnesses to the accident would be able to respond to a brief, factual inquiry by the Court related to their positioning during the incident in question, and each witness was placed under oath. Further questioning was restricted to testimony to be given in open court.

. Although one would normally expect the usher to precede the patrons, given Ms. Hine’s extensive concert experience, her description that she preceded both of them is quite believable:
A. I walked ahead of her because I already knew where she was going and they were, her [the usher] and Cheryl were talking.
As to whether it was the usher or the Plaintiff directly behind her, Ms. Hine had no recollection.

. “Q. So the usher and Antoinette are both standing at Row G?
A. Yes.”

. ‘‘So it’s the stair it's the—like the little flat surface one.”

. Ms. Hine was quite clear that she knew exactly where she was going, and there was no evidence of any delay in her taking her seat.

. At trial she testified it was to the left, but at the view it was demonstrated that she moved to her right, the discrepancy being explained that it was to her left if she were facing the stage, which she was not.

. Plaintiff's Amended Complaint, Paragraphs 5(a)-(e).