**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Madel C. Rivero, as Personal Representative for the
Estate of Lilia Lorena Blandin, Respondent,

v.

Sheriff Steve Loftis, in his capacity as Sheriff of
Greenville County, Appellant.

Appellate Case No. 2016-000548

———————

Appeal From Greenville County
Robin B. Stilwell, Circuit Court Judge

———————

Unpublished Opinion No. 2018-UP-340
Heard May 17, 2018 – Filed July 25, 2018

———————

**AFFIRMED**

———————

Russell W. Harter, Jr. and Carly H. Davis, both of
Chapman, Harter & Harter, P.A., of Greenville, and
Andrew F. Lindemann, of Lindemann, Davis & Hughes,
PA, of Columbia, for Appellant.

Daniel Joseph Farnsworth, Jr., of Farnsworth Law
Offices, LLC, of Greenville, J. Christopher Wilson and
Daniel W. Luginbill, both of Wilson & Luginbill, LLC,
of Bamberg, and Blake A. Hewitt, of Bluestein
Thompson Sullivan, LLC, of Columbia, for Respondent.

**PER CURIAM:**  In this wrongful death action, Appellant Sheriff Steve Loftis (Sheriff Loftis) challenges the denial of his motion for a new trial and the denial of his motion for a judgment notwithstanding the verdict (JNOV).  Sheriff Loftis asserts the circuit court erred by denying his request for an evidentiary hearing to address a juror's intentional concealment of an incident involving her husband twisting her wrist when presented with a voir dire question intended to screen out victims of criminal domestic violence (CDV).  Sheriff Loftis argues the concealed information would have been a material factor in the use of his peremptory challenges had it been disclosed.  Sheriff Loftis also argues the circuit court erred by denying his directed verdict and JNOV motions because (1) there was no evidence of causation in fact, and (2) he was entitled to absolute sovereign immunity under the South Carolina Tort Claims Act, sections 15-78-10 to -220 of the South Carolina Code (2005 & Supp. 2017).[1]  We affirm.

## I.    Juror Misconduct

Sheriff Loftis argues the circuit court erred by (1) failing to conduct an evidentiary hearing concerning a juror's concealment of an incident involving her husband twisting her wrist, and (2) concluding Sheriff Loftis did not show the concealment was intentional.

"Under South Carolina law, litigants are guaranteed the right to an impartial jury."  *Alston v. Black River Elec. Co-op.*, 345 S.C. 323, 326, 548 S.E.2d 858, 859 (2001) (citing S.C. Code Ann. § 14-7-1050 (Supp. 2000)); *see* § 14-7-1050 (2017) ("[I]n all civil cases any party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury.").  Our supreme court "has recognized trial judges and attorneys cannot fulfill their duty to screen out biased jurors without accurate information."  *State v. Kelly*, 331 S.C. 132, 145, 502 S.E.2d 99, 106 (1998).

> Necessarily it is expected and required that jurors in their answers shall be completely truthful and that they shall disclose, upon a general question, any matters [that] might tend to disqualify them from sitting on the case for any reason.  It therefore becomes imperative that the answers be truthful and complete.  False or misleading answers

---

[1] Specifically, section 15-78-60 of the South Carolina Code (2005).

may result in the seating of a juror who might have been discharged by the [c]ourt, challenged for cause by counsel[,] or stricken through the exercise of peremptory challenge.

*Id.* at 145–46, 502 S.E.2d at 106 (quoting *State v. Gulledge*, 277 S.C. 368, 371, 287 S.E.2d 488, 490 (1982)). "Through the judge, parties have a right to question jurors on their voir dire examination not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge." *State v. Woods*, 345 S.C. 583, 587, 550 S.E.2d 282, 284 (2001) (quoting *Gulledge*, 277 S.C. at 370, 287 S.E.2d at 490).

When a juror conceals information inquired into during voir dire, a new trial is required only when the court finds the juror intentionally concealed the information[] and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges.

*Id.*

"[I]ntentional concealment occurs when the question presented to the jury on voir dire is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." *Id.* at 588, 550 S.E.2d at 284. "Unintentional concealment, on the other hand, occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances." *Id.* "Necessarily, whether a juror's failure to respond is intentional is a fact intensive determination which must be made on a case by case basis." *Id.* Twelve years after issuing the *Woods* opinion, the court continued to rely on *Woods* for its analysis: "[J]uror concealment claims are governed by the analysis set forth in *Woods*, and such case-by-case determinations are most appropriately made after a hearing, which allows the factual circumstances to be more fully developed." *McCoy v. State*, 401 S.C. 363, 372, 737 S.E.2d 623, 628 (2013).

During voir dire in the present case, the circuit court asked the prospective jurors, "Is there anyone among you who has been a victim of [CDV]?" The juror in question, Robin Burns, remained silent despite a recent incident involving her

husband twisting her wrist. Burns called 911 to report the incident, and police officers arrived at her home to investigate but made no arrests. When Sheriff Loftis learned of the nondisclosure, he filed a new trial motion.

Subsequently, the circuit court reviewed the incident report from Burns' 911 call as well as the tape, transcript, and responding officers' affidavits. Based on this review, the circuit court concluded Burns was not a CDV victim and, thus, Sheriff Loftis had "failed to establish the 'fact of disqualification' so as to obtain a new trial based upon disqualification of a juror." The circuit court also concluded, "The question the court posed in *voir dire* was clear and unambiguous, and there [was] no evidence that [Burns], either objectively or subjectively, concealed information." The court then stated that it was unnecessary to conduct an additional hearing for the purpose of examining Burns under oath.

Sheriff Loftis contends the circuit court erred in concluding that he had to establish the fact of disqualification because juror disqualification is not an absolute requirement under the *Woods* test. We acknowledge the merit to this argument. *See Woods*, 345 S.C. at 590, 550 S.E.2d at 285 ("No motion to disqualify Juror B was made, thus there is no discretionary ruling by the trial judge for this [c]ourt to review. However, we need not decide whether [Juror B's] relationship with the solicitor's office would support a challenge for cause because we find her failure to disclose the relationship prevented the respondent's intelligent exercise of his peremptory challenges."). Nonetheless, we conclude that the question, "Is there anyone among you who has been a victim of [CDV]?" was ambiguous. Including the term "criminal" in the question could cause a potential juror to believe any experience she or he had with domestic violence had to result in an arrest at the very least. Therefore, Burns' concealment was unintentional. *See Woods*, 345 S.C. at 588, 550 S.E.2d at 284 ("Unintentional concealment . . . occurs where the question posed is ambiguous . . . .").[2]

---

[2] At oral argument, Sheriff Loftis asserted that the question of ambiguity was not before this court on appeal because Rivero did not appeal the circuit court's statement that the question was "clear and unambiguous," and therefore, this statement became the law of the case. *See Judy v. Martin*, 381 S.C. 455, 458, 674 S.E.2d 151, 153 (2009) ("Under the law-of-the-case doctrine, a party is precluded from relitigating, after an appeal, matters that were either not raised on appeal, but should have been, or raised on appeal, but expressly rejected by the appellate court." (citing 5 C.J.S. *Appeal & Error* § 991 (2007))). The circuit court's statement is not binding on this court. *See* Rule 220(c), SCACR. ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.");

Rivero correctly maintains that *Woods* and *McCoy* do not require an examination of Burns under oath, although the key language in *Woods* and *McCoy* certainly encourage this type of evidentiary hearing. In any event, given the ambiguity of the question posed to the prospective jurors in the present case, the circumstances do not merit an evidentiary hearing. Therefore, we affirm the circuit court's denial of the motion for an evidentiary hearing or new trial.

## II. JNOV/Causation in Fact

Sheriff Loftis asserts the circuit court erred by submitting the question of causation in fact to the jury rather than concluding there was no causation in fact as a matter of law. We disagree.

"Negligence is not actionable unless it is a proximate cause of the injuries, and it may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided." *McKnight v. S.C. Dep't of Corr.*, 385 S.C. 380, 386, 684 S.E.2d 566, 569 (Ct. App. 2009) (quoting *Hanselmann v. McCardle*, 275 S.C. 46, 48–49, 267 S.E.2d 531, 533 (1980)). "Proximate cause is the efficient or direct cause; the thing that brings about the complained of injuries." *Id.* "Proximate cause requires proof of (1) causation in fact and (2) legal cause." *Id.* (quoting *Bramlette v. Charter–Medical–Columbia*, 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990)). "Causation in fact is demonstrated by establishing the plaintiff's injury would not have occurred 'but for' the defendant's negligence, while legal cause is proved by establishing foreseeability." *Id.* at 386–87, 684 S.E.2d at 569.

"Ordinarily, proximate cause is a question for the jury, but when the evidence is susceptible to only one inference, it becomes a matter of law for the court." *Id.* at 387, 684 S.E.2d at 569. "Only in rare or exceptional cases may the question of proximate cause be decided as a matter of law. If there is a fair difference of opinion regarding whose act proximately caused the injury, then the question of proximate cause must be submitted to the jury." *Hurd v. Williamsburg Cty.*, 353 S.C. 596, 613–

---

*I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding the appellate court may rely on a respondent's additional sustaining grounds "or any other reason appearing in the record to affirm the lower court's judgment"); *id.* at 421, 526 S.E.2d at 723 ("An affirmance promotes judicial economy and finality in private and public affairs, which are important public policies.").

14, 579 S.E.2d 136, 145 (Ct. App. 2003) (citations omitted), *aff'd*, 363 S.C. 421, 611 S.E.2d 488 (2005).

Here, in its order denying a JNOV, the circuit court stated, "There was evidence that had Avery been arrested on December 9, 2011, he would likely have still been in jail on December l0, 2011[,] when he killed Lilia." Sheriff Loftis argues this reasoning is speculative and also insufficient to establish causation in fact because it relies on merely a possibility rather than a probability. To illustrate this point, Sheriff Loftis cites this court's opinion in *Thomas v. South Carolina Department of Highways & Public Transportation*, which involved an uninsured vehicle hitting and injuring a pedestrian. 320 S.C. 400, 401, 465 S.E.2d 578, 579 (Ct. App. 1995). The pedestrian filed a negligence action against the highway department, alleging it was negligent in failing to recover the motorist's license plates and motor vehicle registration after the motorist's insurance had been cancelled. *Id.* at 401–02, 465 S.E.2d 578, 579–80. In affirming a directed verdict in the highway department's favor, this court explained the pedestrian's failure to show causation in fact:

> To establish causation in fact, Thomas was required to present evidence that showed the accident would not have occurred had the Department complied with the statute in question. He failed to do this. There is no evidence at all that even if the Department had taken Green's license tag and car registration, Green, who had a valid driver's license, would not have been negligently operating either the uninsured vehicle or some other vehicle at the time he ran over Thomas. We can only speculate about what he would or would not have done had the Department recovered his license tag and car registration.

*Id.* at 402, 465 S.E.2d at 580 (citation omitted). While the reasoning of *Thomas* is persuasive, the present case is distinguishable. If Avery had been in jail all day on December 10, he certainly would not have had the opportunity to kill Lilia on that day.

While we have found no South Carolina appellate opinions with comparable facts, we find instructive the opinion of the Appellate Court of Connecticut in *Alexander v. Town of Vernon*, 923 A.2d 748 (Conn. App. 2007). *Alexander* involved a wrongful death action brought by a murder victim's estate against the town of Vernon and seven members of the town's police department. *Id.* at 750. The trial

court granted summary judgment to the town and the officers, concluding that the officers' inaction did not cause the victim's death. *Id.*

The *Alexander* court affirmed the superior court's award of summary judgment to the town and the police officers, concluding the victim's estate could not show causation. *Id.* at 757. The court's language provides an enlightening contrast to the facts in the present case:

> Here, to establish causation the plaintiff must demonstrate, *without resort to conjecture*, that the murder would not have occurred but for the defendants' alleged negligence or recklessness. Under these facts, we are persuaded that the plaintiff cannot satisfy that burden. One can only *speculate* as to whether an attempt on the part of the defendants to "try and find" Caldwell would have succeeded. Furthermore, even if the defendants had found and arrested Caldwell, it is quite possible that he would have been released from custody on Monday morning. *The plaintiff has not presented evidence suggesting that, more likely than not, Caldwell would not have been released at his arraignment on Monday morning. Without any assurance that Caldwell would have remained incarcerated on Monday, there is no way to know whether his arrest would actually have prevented the murder*.

*Id.* at 755 (emphases added). The court added,

> [T]here are too many variables involved to state with any degree of certainty that the victim's murder would not have occurred in the absence of the officers' alleged negligence or recklessness. To reach the opposite conclusion, a jury would first have to suppose that the officers could have found Caldwell in the time preceding the murder. The jury would then have to further assume that, once arrested, Caldwell would not have been released from custody before Monday afternoon. *Because there is no evidence in the record on which to make either of those critical inferences, the jury would be forced to resort to sheer speculation*. Yet, a determination of causation on the basis

> of conjecture or speculation is precisely what we cannot
> permit.

*Id.* at 756–57 (emphasis added).

Here, unlike the presentation of evidence in *Alexander*, Rivero presented the following evidence, which we view in the light most favorable to Rivero:  Avery's behavior prompting Lilia to call 911 on December 9 was a violation of the no-contact condition of his bond for his prior CDV arrest.[3]  Therefore, the law enforcement expert for Sheriff Loftis admitted on cross-examination that had Avery been arrested and jailed on December 9, his prior CDV arrest and resulting bond violation would make it unlikely that he would have been released on another bond the following morning.  Rather, the second bond would likely have been set at a higher amount and he would have had to wait longer for his release.  This evidence goes beyond mere speculation as it shows more than a mere possibility but rather a probability, i.e., more likely than not, Avery would have been in jail on December 10 rather than stabbing Lilia had he been arrested on December 9.

Based on the foregoing, there was more than one reasonable inference to be drawn by the jury as to causation in fact, and thus, the question was properly submitted to the jury.  *See McKnight*, 385 S.C. at 387, 684 S.E.2d at 569 ("Ordinarily, proximate cause is a question for the jury, but when the evidence is susceptible to only one inference, it becomes a matter of law for the court.").

## III.   JNOV/Tort Claims Act

Pursuant to Rule 220(b), SCACR, and the following authorities, we affirm the circuit court's conclusion that a gross negligence standard applies to those exceptions to the State's waiver of sovereign immunity asserted by Sheriff Loftis:  *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301, 641 S.E.2d 903, 907 (2007) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." (brackets omitted) (quoting *Wilder Corp. v. Wilke*, 330 S.C. 71,

---

[3] The record does not indicate the ultimate outcome of that CDV charge or whether the December 5 hearing on that charge occurred as scheduled.  Therefore, there is a question as to the continuing viability of the bond conditions after December 5.  Nonetheless, this court must view the evidence in the light most favorable to Rivero; thus, we are assuming the no-contact condition of the October 31 bond was still in place.

76, 497 S.E.2d 731, 733 (1998))); *TNS Mills, Inc. v. S.C. Dep't of Revenue*, 331 S.C. 611, 617, 503 S.E.2d 471, 474 (1998) ("An issue conceded in a lower court may not be argued on appeal."); *Clark v. S.C. Dep't of Pub. Safety*, 362 S.C. 377, 386, 608 S.E.2d 573, 578 (2005) ("The burden of establishing an exception to the waiver of immunity is on the governmental entity asserting the defense."); S.C. Code Ann. § 16-25-70(I) (2015) ("In addition to the protections granted to the law enforcement officer and law enforcement agency under the South Carolina Tort Claims Act, a law enforcement officer is not liable for an act, omission, or exercise of discretion under this section *unless the act, omission, or exercise of discretion constitutes gross negligence, recklessness, wilfulness, or wantonness*." (emphasis added)); S.C. Code Ann. § 15-78-60(25) (2005) (setting forth as an exception to the State's waiver of sovereign immunity, "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, *except when the responsibility or duty is exercised in a grossly negligent manner*" (emphasis added)).

**AFFIRMED.**

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**